## Conley v. Mayo.

(Decided February 13, 1914.)

### Appeal from Knott Circuit Court.

1. Execution—Sale of Land Under—Not Valid as to a Subsequent Purchaser for Value Without Notice.—As between a purchaser of land at its sale under an execution and a subsequent purchaser for value of the same land by deed from the owner before the purchaser at the execution sale obtained a conveyance from the sheriff, the title of the subsequent purchaser will prevail, if, at the time of his purchase and the conveyance to him of the land, he had no notice of its previous sale under the execution to the first purchaser. In such case whatever right was acquired by the purchaser at the execution sale, was lost by the failure on his part, or that of the plaintiff in the execution, to cause to be recorded in the County Clerk's office the memorandum of such execution sale as required by Section 2358-a, subsection 2, Ky. Stats.

2. Land—Parol Partition of—When Binding Between the Parties.— A parol partition of land, followed by the actual, adverse possession of the shares by the respective parties for fifteen years, is conclusive of the right of each to the portion received by him in the division.

3. Agency—Not Competent to Establish by Declarations of Agent.— It is a well settled rule of the law, that an agency cannot be established by the testimony of the alleged agent alone.

H. T. BAILEY, JASON RICHIE and W. H. MAY for appellant.

SMITH & COMBS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This appeal presents a controversy as to the owner-ship of a tract of land of about 40 acres lying at the head of Salt Lick of Beaver Creek, in Knott County; the ap-pellant, J. M. Conley, claiming to be the owner of the land by its purchase at an execution sale and a deed from the sheriff of Knott County, executed May 17, 1906; and appellee, J. C. C. Mayo, claiming to be the owner thereof, by purchase and deed from J. M. Bailey, September 2, 1905, and also by deed from Taulbee Bailey, of later date. The action was brought September 14, 1911, by appellee, to enjoin appellant from trespassing upon the land, to cancel the deed made him by the sheriff, and to quiet his (appellee's) title to the land. Taulbee Bailey was joined with the appellant, Conley, as a defendant to the action, but he by answer disclaimed any ownership of the land, and, to make the disclaimer more effective, executed to appellee a quit-claim deed conveying whatever interest he was supposed to have in the land; and upon the execu-tion of this deed the action was abated as to him.

It was averred in the petition that appellee was a pur-chaser of the land for value without notice of the alleged judgment, the execution issued thereon, its levy or the sale of the land thereunder at which appellant purchased it; that there was no lis pendens notice of any of the al-leged execution proceedings filed in the county clerk's office as required by law, which could have given appel-lee information of the levy upon or sale of the land, at the time of his purchase thereof from J. M. Bailey and his acceptance of the deed made him by the latter.

The appellant's answer specifically denied the aver-ments of the petition and alleged his title to the land by virtue of his purchase thereof at the execution sale and deed from the sheriff of Knott County, and also under an alleged deed from David Conley. By the judgment rendered the circuit court declared appellee the owner of the land, quieted his title thereto and enjoined appellant from further trespassing thereon. From that judgment the latter has appealed.

Appellant and appellee, in reality, claim title from a common source, that is, from J. M. Bailey. The land was levied upon as the property of J. M. Bailey; the execu-tion having issued on a judgment against him in favor of one John Bradley. The sale under the execution, at

which appellant became the purchaser, occurred May 20, 1905. The deed made the latter by the sheriff was not executed or acknowledged until May 17, 1906. In the meantime appellee purchased the land in controversy and two other small tracts from J. M. Bailey, the defendant in the execution, paying him for the several tracts $1,000. On the same day, Sept. 2, 1905, Bailey by proper deed conveyed him the lands and this deed was immediately put to record. These facts show that appellee was a purchaser for value and the weight of the evidence conduces to prove that at the time he purchased these lands and received the deed thereto, he had no knowledge that the tract in controversy had been levied upon or sold under the execution against J. M. Bailey in favor of John Bradley. Appellant took the deposition of the wife of Bailey who testified therein that at the time the deed to appellee was executed by herself and husband, one G. B. Stapleton was present; that Stapleton told her he was acting as appellee's agent in the purchase of the land from her husband, and that Stapleton was then informed of the prior sale of the land under Bradley's execution and of its purchase by appellant at such sale. Appellee testified that Stapleton was not at the time of his purchase of the land from J. M. Bailey or of its conveyance to him by the latter and his wife, or at any other time his agent, and that he had nothing to do with his (appellee's) purchase of the land; that Stapleton was about that time, or had previously been, agent for the Northern Coal & Coke Company and perhaps the Beaver Creek Coal & Coke Company with respect to the purchase of other lands, and that, though appellee was a stockholder in each of those corporations, they had no connection with his purchase of the land from the Baileys. Appellee also testified that J. J. Johnson acted for him in the negotiations had with J. M. Bailey with reference to the purchase of this land, and, Johnson, acting in connection with J. W. M. Stewart, a lawyer of Ashland, closed the transaction with Bailey. Both Johnson and Stewart corroborated these statements of the appellee and the three of them further testified that, at the time of the purchase of the land from Bailey none of them had information or knowledge of the judgment of Bradley, the levy of the execution on the land, its sale thereunder or purchase at such sale by appellant. Stapleton's death prevented the taking of his deposition

and the depositions of appellee, Stewart and Johnson are conclusive as to the matter of the want of notice because uncontradicted by any other evidence in the case. The testimony of Mrs. Bailey does not contradict them; it may be true as stated by her that Stapleton was informed of the previous sale of the land under execution and its purchase by appellant, but her testimony as to the agency of Stapleton was incompetent because based wholly upon the alleged declaration of Stapleton that he was appellee's agent. That an agency cannot be established by the declaration of the alleged agent alone is too well recognized to require citation of authority.

It is, therefore, manifest from the evidence, that at the time of appellee's purchase of the land in controversy and its conveyance to him, he did not have notice of its having previously been levied on or sold under the execution against J. M. Bailey in favor of John Bradley, or of appellant's purchase thereof at that sale; and this fact, together with the equally well established further fact, that he was a purchaser for value, makes his title acquired by virtue of the deed from J. M. Bailey and wife to him superior to any right that appellant acquired to the land by virtue of the execution sale or under the deed thereafter made him by the sheriff. Section 2358a, subsection 2, Ky. Statutes, provides:

"No attachment or execution hereafter issued, nor any levy or sale under either, shall in any manner affect the right, title to, or interest of a subsequent purchaser, lessee or incumbrancer without notice thereof of any real estate or any interest therein upon which such attachment or execution may be or may have been levied, except from the time there shall be filed in the office aforesaid (County Clerk's office) a memorandum, showing the number and style of the action in which said attachment or execution issued, the court from which it issued, the number, if any, of such attachment or execution, the date thereof, and the name of the persons in whose favor and against whom respectively it issued. Such notice may be filed by any party in interest."

If the plaintiff in the execution, or appellant as the purchaser of the land thereunder, had complied with the provisions of the statute supra, the latter would, by virtue thereof have acquired under the deed from the sheriff, though it was made after appellee's purchase of the land and its conveyance to him by Bailey and wife, a title

to the land or lien thereon for the amount of his bid, superior to any claim of title acquired by appellee under the deed from the Baileys; but as the necessary steps mentioned were not taken, appellant's claim to the land in controversy must yield to that of appellee. Trapp's Admr. v. Bailey, Etc., 152 Ky., 369; White v. Manning, 26 R., 887; Ponder v. Boaz, 23 R., 2429.

Little importance can be given the quit-claim deed from Taulbee Bailey to appellee. The only claim Taulbee Bailey had to the land in controversy was by virtue of an unrecorded deed he received from his father, J. M. Bailey before the sale of the land under the execution; and as neither appellant nor appellee had notice of its existence when they became purchasers of the land, the former at its sale under the Bradley execution, and the latter under the deed from J. M. Bailey and wife, the title of either must have prevailed over any right of Taulbee Bailey. But while appellee's title to the land is in no way strengthened by the deed made him by Taulbee Bailey, its execution by the latter will estop him from setting up any future claim to the land.

We are further of opinion that appellant failed to establish title to the land in controversy by virtue of a deed from David Conley. Such a deed, if made, was never put to record nor was the deed or a copy thereof exhibited in the case or any proof introduced of its execution or existence. Appellant claimed that the deed had been left in the possession of one Fred Atkinson, but he did not introduce Atkinson as a witness, although, according to the evidence, Atkinson was within easy reach. There was no attempt made to show the loss of the deed nor did any witness save appellant testify that he had ever seen it. But had David Conley executed such a deed, it would have invested appellant with no title, because it is apparent from the record that he had no title to convey. It is true that David Conley and his brother, George Conley, at one time owned a considerable tract of land of which the parcel in controversy was apart, having purchased the whole from the heirs of Sampson Conley, but it is apparent from the evidence that after their purchase of the land it was, under a parol agreement between them, partitioned more than 25 years ago, George taking in the division the portion embracing this tract and David the remainder. It is further apparent from the evidence that each went upon his part of the land re-

ceived in the division and held actual adverse possession thereof for more than 25 years before the institution of this action. In Caudill v. Hayes, Etc., 28 R., 182, we held that a parol partition of land, followed by actual adverse possession of the shares by the respective parties for fif-teen years, is conclusive of the right of each to the portion received by him in the division. George Conley still resides upon a part of the land he received under the parol partition; but the portion received by David Con-ley which did not embrace the tract in controversy, was sold by him and the title through subsequent conveyances finally vested in appellant. It is, however, shown by the evidence that George Conley in 1898 by title bond sold to Woodson Coburn so much of the land received by him in the partition previously made as is contained in the boundary in controversy in this action. Coburn gave his note for part of the purchase price and this note was assigned by George Conley to J. M. Bailey. Upon Co-burn's failing to pay the note, when due, Bailey sued him; George Conley, as assignor of the note and holder of the legal title to the land was also made a party de-fendant to the action. By the judgment of the court in that action Bailey was given a lien on the land for the amount of the note held by him and the land directed to be sold in satisfaction thereof. When sold thereafter it was purchased by Bailey to whom it was later con-veyed by deed from the court's commissioner. This land thus purchased by Bailey he and his wife subsequently, conveyed to appellee as previously stated in the opinion.

So, it is manifest from the foregoing uncontradicted facts appearing in the record, that appellant's alleged claim of title to the land under a deed from David Con-ley is wholly without merit. The rights of the parties having properly been determined by the circuit court, the judgment is affirmed.